IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:12-cv-00045-FL

| | |
|---|---|
| LARRY KEYS, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-23, DE-25] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Larry Keys ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be granted, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

### STATEMENT OF THE CASE

Claimant protectively filed an application for a period of SSI on June 20, 2003, alleging disability beginning April 1, 1996. (R. 39). His claim was denied initially and upon reconsideration. *Id.* A hearing before Administrative Law Judge ("ALJ") William T. Vest, Jr. was held on November 27, 2005, and on December 15, 2005, Claimant's request for benefits was denied. *Id.* On September

23, 2009, the Appeals Council granted review and issued a remand order due to the fact that the record upon which the ALJ had based the decision was lost, precluding review of the ALJ's decision. (R. 62). The Appeals Council ordered a new hearing and noted that Claimant had subsequently been awarded benefits in a February 19, 2009 hearing decision based on a new application filed on August 11, 2006. *Id.* On March 18, 2010, a second hearing was held before ALJ Edward W. Seery (R. 488-515), and on July 1, 2010, Claimant's request for benefits for the period from February 23, 2004 through August 11, 2006 was denied (R. 19). On May 14, 2012, the Appeals Council denied Claimant's request for review. (R. 5-8). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171,

2

176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

3

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's residual functional capacity ("RFC"); and (2) failure to pose a hypothetical to the VE that adequately reflected Claimant's RFC. Pl.'s Mem. at 10-19 [DE-24].

**FACTUAL HISTORY**

### I.   ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 21). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease; right shoulder impairment; and asthma. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] requiring only occasional bending and stooping and avoidance of concentrated exposures to chemicals, fumes, and other common pulmonary irritants. (R. 22). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 22-24). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a dump truck driver, truck driver, and farm laborer. (R. 24). Nonetheless, at step five, upon considering Claimant's age, education,

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

4

work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 25).

## II. Claimant's Testimony at the Administrative Hearing

Claimant testified as follows at the administrative hearing. Claimant was 50 to 52 years old during the relevant time period from February 23, 2004 to August 11, 2006, and lived with his wife and six of their eight children. (R. 492, 494). Claimant attained a ninth grade education (R. 495) and was last employed in approximately 2002 as a truck driver hauling boats coast-to-coast. (R. 495-96). Claimant's past work experience also includes driving a garbage truck and performed seasonal farm labor. (R. 497).

Claimant explained he could not work during the relevant time period due to back pain radiating to his legs and asthma. (R. 498-99). Some days he was pain free, while other days, generally after moving something heavy, his back would go out. *Id.* During these episodes he experienced difficulty getting up and had to lie down on his right side, because lying on his left side aggravated his asthma. (R. 499). Sitting or standing for long periods of time exacerbated Claimant's back pain, and Claimant experienced fatigue and shortness of breath when walking for long periods. (R. 500). Claimant's hands cramped and his back "kink[ed]" when lifted twenty to thirty pounds. *Id.* Claimant took Oxycodone and Dilaudid for pain relief, and Claimant's asthma was treated with an inhaler, which he used three times a day or more. (R. 500-01, 503). Claimant attempted physical therapy, but it caused cramping in his side and shortness of breath, and his doctor advised him to discontinue the treatment. (R. 501). Claimant was advised by his doctor that surgery would not improve his condition. (R. 506).

Claimant spent more than half the day lying down and watching television (R. 501, 507).

He could sit at least an hour or two before lying down and could stand twenty to thirty minutes before having to sit. (R. 504). Claimant would try to wash dishes, but could never finish due to cramping in his hand and could not hold a broom. (R. 507). Claimant could lift his grandchild and hold him for a couple of minutes, but could not play basketball and could shop only for short amounts of time. (R. 505, 507-08).

### III. Vocational Expert's Testimony at the Administrative Hearing

Linda Augins testified as a VE at the administrative hearing. (R. 509-13). After the VE's testimony regarding Claimant's past work experience (R. 511), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed the following hypothetical question:

> [A]ssume that this hypothetical individual, strength wise, was confined to–and this was prior to his age–prior to when he became 55. Let's assume he was confined to light work with the additional limitations that his ability to stoop and bend were on an occasional basis, and that he should avoid exposure to common, ordinary irritants. Based upon that profile, would there be jobs, in your opinion, that the person could perform and would be available in significant numbers?

*Id.* The VE answered affirmatively and opined that such an individual could perform the light and unskilled jobs of dining room attendant (DOT # 311.677-010), locker room attendant (DOT # 358.677-014), and ticket seller (DOT # 211.467-030). (R. 512). The ALJ next asked if any of those positions would accommodate a sit-stand option, and the VE responded that only the ticket seller position would accommodate a sit-stand option. *Id.* The ALJ then asked the VE to assume that Claimant's testimony was credible and the individual had all impairments to which Claimant testified at the severity level to which he testified. (R. 512-13). The VE responded that such limitations would preclude all employment. (R. 513). In response to questioning by Claimant's

representative, the VE testified that a sit-stand option would preclude most light and unskilled jobs recognized in the DOT. *Id.*

## DISCUSSION

### I. The ALJ's RFC Assessment

Claimant contends that the ALJ's RFC assessment does not include all of Claimant's limitations and is not supported by substantial evidence. Pl.'s Mem. at 10-18. Specifically, Claimant asserts that the ALJ failed to consider new and material evidence and the ALJ erred in assessing Claimant's credibility.

When a claimant submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.* Under sentence-six, "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Nuckles v. Astrue*, No. 7:09–CV–13–FL, 2009 WL 3208685, at *4 (E.D.N.C. Oct. 5, 2009) (explaining a sentence six remand requires the evidence be new and material and there must be good cause for failing to submit the evidence earlier).

7

Here, the evidence at issue is a March 18, 2010 declaration from Ed Warren, PA-C, a physicians' assistant who had treated Claimant since December 2002. (R. 392-94). This evidence was submitted by facsimile to the ALJ on the day of the administrative hearing by Claimant's representative, *id.*, and contrary to Claimant's contention was referenced by exhibit number (B-17F) in the ALJ's decision (R. 23). Thus, because this evidence was in the record before the ALJ, it is not new evidence and a sentence-six remand is not warranted.

Notwithstanding this determination, remand under sentence four is warranted, because the ALJ failed to assess Warren's statement and explain his findings with respect thereto. When making an RFC assessment, an ALJ "must always consider and address medical source opinions." S.S.R. 96–8P, 1996 WL 374184, *7 (July 2, 1996). While this court has recognized that "generally an ALJ is required to explain the weight given to the opinions of medical sources in their opinions," it has also declined to find reversible error in the ALJ's failure to explicitly state the weight given to a medical opinion, "where an ALJ has sufficiently considered all of the evidence in a case to permit a reviewing court to conduct a meaningful review of his decision." *Hare v. Astrue*, No. 7:08-CV-36-FL, 2009 WL 873993, at *4 (E.D.N.C. Mar. 24, 2009).

Although Warren is a physicians' assistant, his opinion may constitute substantial evidence supporting Claimant's application. Pursuant to the regulations, physicians' assistants are not considered acceptable medical sources. *See* 20 C.F.R. § 416.913(a) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). Nonetheless, "evidence from other sources," such as physicians' assistants, may be used "to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work . . . ." *Id.* § 416.913(d) (including

8

physicians' assistants as "other sources"); *see also* S.S.R. 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (explaining the opinions from "other [medical] sources ... may provide insight into the severity of [a claimant's] impairment and how it affects [a claimant's] ability to function"). Since medical sources, such as physicians' assistants, "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians . . . [o]pinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." S.S.R. 06-03p, 2006 WL 2329939, at *3. Indeed, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source." *Id.*

Here, Warren was Claimant's primary treatment provider for back pain throughout the entire period at issue (R. 216-70). *See* S.S.R. 06-03p, 2006 WL 2329939, at *5 ("[I]t may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion."). Yet, without discussion and citing to Warren's opinion only by its exhibit number, the ALJ appears to summarily dismiss Warren's opinion as "relat[ing] to time periods [e]ither before or after the time period in question in this matter." (R. 23). The period at issue in this case, as recognized by the ALJ, is from "February 23, 2004, alleged onset date, until the August 11, 2006, established onset date of benefits in [Claimant's] subsequent application." (R. 19). Warren's opinion states that Claimant had been his patient since December 2002, discusses objective tests from 2005 documenting Claimant's

9

impairments, discusses Claimant's limitations, and concludes that Claimant has not been capable of work since February 2004. (R. 392-94). This evidence relates directly to the period at issue, as do Warren's numerous treatment notes from March 2004 through November 2006 (R. 216-270).

The Commissioner notes that the ALJ justifiably "mistook" Warren's March 2010 declaration (R. 392-94) for a substantially similar February 2009 declaration by Warren (R. 366-68), which applied to the period from August 11, 2006 going forward. The Commissioner's theory is supported by the notation "Dup at B-13F" handwritten on the cover sheet for the March 2010 declaration (R. 391), and "B13F" is the exhibit designation for Warren's February 2009 declaration (R. 365-68). This perceived mistake, whether justifiable or not, further supports the need for remand here, where the February 2009 declaration was limited to the application period to which it related, beginning August 11, 2006, and not the period at issue in the present case. Therefore, it appears the ALJ not only failed to discuss Warren's opinion, but more importantly failed to consider it in his decision, because he thought it was duplicative of an earlier opinion that applied to a different time period.

The Commissioner further argues that remand is not warranted because Warren's opinion is inconsistent with the other medical evidence of record, was issued several years after the period to which it applies, and suggests Claimant has been disabled since February 2004, inconsistent with his earlier opinion that Claimant has been disabled since August 2006.[2] The Commissioner is, in essence, inviting the court to conclude that Warren's opinion is not credible. However, it is the

---

[2] It is noteworthy, with respect to the Commissioner's contention that Warren's March 2010 opinion is inconsistent with his February 2009 opinion, that it appears obvious Warren's opinions were tailored to address the relevant application period. Warren's 2009 opinion was limited to the time period for which Claimant had applied for benefits, beginning August 11, 2006, and Warren's 2010 opinion was directed to the current application period, beginning February 2004. Thus, they do not appear to be inherently contradictory on that basis.

10

ALJ's duty to consider and explain all the relevant evidence and the ALJ should have the opportunity to do so, *see Sterling Smokeless Coal Co.*, 131 F.3d at 439–40, particularly where the Commissioner subsequently awarded benefits to Claimant for the period immediately following the one at issue here based on the same impairment alleged here, degenerative disk disease (R. 51).[3] Accordingly, the ALJ erred in failing to consider and discuss Warren's March 2010 opinion, and it is recommended that the case be remanded pursuant to sentence four of § 405(g).

Furthermore, because the ALJ's handling of the opinion evidence is dispositive, other issues raised by Claimant regarding the ALJ's RFC and credibility analysis and the hypothetical posed to the VE need not be considered. However, where medical opinion evidence is integral to the ALJ's consideration of these additional issues, the ALJ should reevaluate his RFC and credibility determinations and the hypothetical posed to the VE, as necessary, on remand. *See* S.S.R. 96-7p, 1996 WL 374186, at *1 (July 2, 1996); S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

## CONCLUSION

For the reasons stated above, it is RECOMMENDED Claimant's Motion for Judgment on the Pleadings [DE-23] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-25] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file

---

[3] ALJ Hallie Larsen's notes from the February 13, 2009 hearing, which resulted in an award of benefits for the period beginning August 11, 2006, indicate that ALJ Larsen gave little weight to a July 21, 2008 opinion from Warren because, among other things, it was not supported by specific limitations. (R. 77-78). Warren's March 2010 opinion at issue here does list specific limitations resulting from Claimant's impairments. (R. 393). Furthermore, ALJ Larson cited favorably evidence received at the hearing from Warren as "generally accepted" and appears to have relied on this evidence in granting benefits, indicating Warren's 2010 opinion may have some probative value in the present case. (R. 77-78).

11

timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 5th day of September 2013.

Robert B. Jones, Jr.
United States Magistrate Judge